## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Carla Lee, | § | |
| Plaintiff, | § | |
| | § | CASE NO. 5:21-cv-00442 |
| | § | |
| v. | § | |
| | § | |
| Equifax Information Services, LLC; | § | |
| TransUnion, LLC; Rise Credit Service of | § | |
| Texas, LLC; and DOES 1 through 100 | § | |
| inclusive, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

COMES NOW Plaintiff **CARLA LEE** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1.     This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681s-2(b), 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

2.     Defendant Rise Credit Service of Texas, LLC ("Rise") is inaccurately reporting a paid account as currently past due.

3.     Defendant Equifax Information Services, LLC ("Equifax") is inaccurately and incompletely reporting an account without an account name or original creditor, and is reporting this account twice.

4.     Defendant Equifax is also reporting accounts by Jefferson Capital Systems, LLC ("Jefferson"), LVNV Funding LLC ("LVNV"), Portfolio Recovery Associates, LLC ("Portfolio"), and Trident Asset Management, LLC ("Trident") on Plaintiff's credit report two (2) times each.

As both reported tradelines are being reported with a balance, it is increasing the negative effect on Plaintiff's credit score and ability to obtain new credit.

5.      Defendant TransUnion, LLC ("TransUnion") is reporting accounts by Capital Accounts, LLC ("Capital"), I.C. System, Inc. ("IC"), Jefferson Capital Systems, LLC ("Jefferson"), LVNV Funding LLC ("LVNV"), Portfolio Recovery Associates, LLC ("Portfolio"), and Trident Asset Management, LLC ("Trident") on Plaintiff's credit report two (2) times each. As both reported tradelines are being reported with a balance, it is increasing the negative effect on Plaintiff's credit score and ability to obtain new credit.

6.      The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

7.      Creditors intentionally and routinely ignore both industry standards and FCRA requirements for accurately reporting debt information. Creditors know that deviating from recognized credit reporting standards and FCRA requirements will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

8.      This was not the intent of Congress when it enacted the Fair Credit Reporting Act.

## JURISDICTION & VENUE

9.      Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

11.     This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

12.     Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each of the named Defendants conducts sufficient business within the forum state and this Court has personal jurisdiction over each Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

13.     Plaintiff alleges that the Rise debt was paid or settled as agreed in or about July of 2016 and therefore is not currently past due. In the alternative, if any amount was outstanding after

the paid settlement, which Plaintiff denies, said amount was included in Plaintiffs Chapter 7 bankruptcy filing in that the debt was incurred pre-petition and was subsequently discharged.

14.     Plaintiff alleges that the Jefferson debt is reporting on her TransUnion credit report and her Equifax credit report as an open account with a balance and a second time as a collection account with a balance. Plaintiff alleges this is one and the same account and should not be listed twice on her reports.

15.     Plaintiff alleges that the LVNV debt is reporting on her TransUnion credit report and her Equifax credit report as an open account with a balance and a second time as a collection account with a balance. Plaintiff alleges this is one and the same account and should not be listed twice on her reports.

16.     Plaintiff alleges that she has two accounts with Portfolio and that each debt is reporting on her TransUnion credit report and her Equifax credit report as an open account with a balance and a second time as a collection account with a balance. Plaintiff alleges there are only two accounts, not four, and the same account should not be listed twice on her reports.

17.     Plaintiff alleges that the Trident debt is reporting on her TransUnion credit report and her Equifax credit report as an open account with a balance and a second time as a collection account with a balance. Plaintiff alleges this is one and the same account and should not be listed twice on her reports.

18.     Plaintiff alleges that the Capital debt is reporting on her TransUnion credit report as an open account with a balance and a second time as a collection account with a balance. Plaintiff alleges this is one and the same account and should not be listed twice on her report.

19.     Plaintiff alleges that the IC debt is reporting on her TransUnion credit report as an open account with a balance and a second time as a collection account with a balance. Plaintiff alleges this is one and the same account and should not be listed twice on her report.

20.     Plaintiff alleges that Account 260854X (the "Unnamed Account") is reporting on her Equifax credit report without an Account Name or Original Creditor listed and with a current balance. In addition, this account is listed on Plaintiff's credit report twice; once as an open account and once as a collections account.

21.     Plaintiff alleges that a single account cannot be listed on a credit report more than once.

22.     Plaintiff alleges if an account is listed, it must also show the Account Name and/or Original Creditor in order to comply with maximum accuracy and completeness requirements of the FCRA.

23.     Plaintiff alleges that each and every Defendant is familiar with FCRA requirements and subscribes thereto.

24.     Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

25.     Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair her FICO Score.

26.     In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

27.     Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.      FICO, Inc.**

28.     FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

29.     The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions.

30.     A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

31.     Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

32.     Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

33.     There are twenty-eight (28) FICO Scores that are commonly used by lenders.

34.     A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

35.     The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

36.     FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

37.     There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

38.     Each of the five (5) factors is weighted differently by FICO.

39.     In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

40.     Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

41.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

42.     Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

43.     FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

44.     A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." See https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See Id*.

**B.     Metro 2**

45.     The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening, and collection services industries.

46.     The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by CDIA to universally report debts in a particular manner that is understood to be the most accurate in reporting a debt.

47.     The CDIA's Metro 2 format is the credit reporting industry standard for credit reporting. While CDIA's Metro 2 format is intended to standardize credit reporting, this standard is still subject to the FCRA's requirement of *maximum possible accuracy and completeness.*

48.     The credit reporting industry at large depends upon the Metro 2 format and the CDIA's recommendations for reporting debt accurately.

49.     The CDIA is experienced in credit reporting. In support of this allegation, Plaintiff avers the following:

a.     The CDIA offers a FCRA certificate program for all CRAs.

b.     The CDIA offers a FCRA awareness program for all CRAs.

c.     The CDIA offers a FCRA certificate program for DFs.

d.     The CDIA offers a FCRA awareness program for DFs.

e.  The CDIA offers a Metro 2 learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 format as well as the relationship between multiple fields.

f.  The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and TransUnion.

g.  The CDIA developed a credit reporting resource guide for reporting credit.

50.  The CDIA's Metro 2 format is accepted by all CRAs.

51.  The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide ("CRRG").

52.  The CRRG outlines the industry standards for reporting debts using Metro 2 format.

53.  The CRRG is not readily available to the public. It can be purchased for $229.45.

54.  Even if a buyer is ready, willing, and able to pay for the CRRG, the CDIA will not grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

55.  When FICO calculates credit scores, the algorithms use Metro 2 information based on industry standards established by the CDIA.

56.  The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

57.  If the Metro 2 data received by FICO deviates from the FCRA requirements or industry standards, an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower, a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**C.  e-OSCAR**

58.  e-OSCAR is the web-based, Metro 2 compliant system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

59.  When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

60.  The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g., "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**D.     Plaintiff's Credit Report Contains Inaccurate Adverse Tradelines, which Plaintiff Disputed to no Avail**

61.     On August 28, 2020, Plaintiff ordered a three-bureau credit report from Experian to ensure proper reporting by Plaintiff's creditors (the "August 28 Credit Reports").

62.     Plaintiff noticed adverse tradelines in her August 28 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards.

63.     Plaintiff then disputed the inaccurate tradeline regarding the Unnamed Account via certified mail to Equifax, and regarding the Rise account via certified mail to TransUnion; both on or about December 9, 2020 (the "First Dispute Letters").

64.     In regard to the Equifax report, Plaintiff's First Dispute Letters specifically put Equifax on notice that there was no data furnisher identity listed for the Unnamed Account.

65.     In regard to the TransUnion report, Plaintiff's First Dispute Letters specifically put Rise on notice that the account was incorrectly reporting as past due even though the account was paid.

66.     Plaintiff's First Dispute Letters also detailed what was perceived to be problematic about the accounts, addressing each tradeline individually.

67.     Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the accounts as required by the FCRA.

68.     Plaintiff is informed and believes that Equifax received Plaintiff's First Dispute Letters and, in response, sent Plaintiff's dispute to the data furnisher of the Unnamed Account, as the data furnisher, via an ACDV through e-OSCAR.

69.     Plaintiff is informed and believes that TransUnion received Plaintiff's First Dispute Letters and, in response, sent Plaintiff's dispute to Rise, as the data furnisher, via an ACDV through e-OSCAR.

70.     On January 14, 2021, Plaintiff ordered a second three-bureau credit report from Experian to determine if her accounts were updated (the "January 14 Credit Reports").

71.     Plaintiff noticed additional adverse tradelines in her January 14 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards.

72.     Plaintiff then disputed the inaccurate tradeline regarding the Jefferson account, LVNV account, two Portfolio accounts, Trident account and the Unnamed Account via certified

mail to Equifax, and regarding the Jefferson account, LVNV account, two Portfolio accounts, Trident account, Capital account, and IC account via certified mail to TransUnion; both on or about February 2, 2020 (the "Second Dispute Letters").

73.     In regard to the Equifax report, Plaintiff's Second Dispute Letters specifically put Equifax on notice that the Jefferson, LVNV, Portfolio, and Trident accounts along with the Unnamed Account were each being reported twice and one of the duplicate accounts should be removed. Further, Plaintiff's Second Dispute Letters specifically put Equifax on notice that there was no data furnisher identity listed for the Unnamed Account.

74.     In regard to the TransUnion report, Plaintiff's Second Dispute Letters put TransUnion on notice that the Jefferson, LVNV, Portfolio, Trident, Capital, and IC accounts were each being reported twice and one of the duplicate accounts should be removed.

75.     Plaintiff's Second Dispute Letters also detailed what was perceived to be problematic about the accounts, addressing each tradeline individually.

76.     Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the accounts as required by the FCRA.

77.     Plaintiff is informed and believes that Equifax received Plaintiff's Second Dispute Letter and, in response, sent Plaintiff's dispute to Jefferson, LVNV, Portfolio, Trident, and the data furnisher of the Unnamed Account, as the data furnishers, via an ACDV through e-OSCAR.

78.     Plaintiff is informed and believes that TransUnion received Plaintiff's Second Dispute Letter and, in response, sent Plaintiff's dispute to Jefferson, LVNV, Portfolio, Trident, Capital, and IC, as the data furnishers, via an ACDV through e-OSCAR.

79.     On March 7, 2021, Plaintiff ordered a third three-bureau credit report from Experian to determine if her accounts were updated.

**a.     Inaccuracy – Unnamed Account**

80.     Despite actual knowledge, Equifax continued to report Plaintiff's account, beginning in 260854X, without an Account Name or Original Creditor name, and as two, separate tradelines (an Open Account and a Collections Account), each listing the full balance. This is patently inaccurate as a single account cannot be reported more than once, and reporting accounts without an Account Name or Original Creditor is wholly incomplete.

81.     Equifax did not update the tradelines on the Unnamed Account to reflect the Account Name or Original Creditor.

82.     Equifax did not update the reporting to delete the duplicated tradelines of the Unnamed Account.

83.     Equifax was twice provided notice that Plaintiff was disputing the inaccurate and misleading information, but Equifax failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

84.     The most basic investigation would include a simple review of the account as reported compared to the maximum possible accuracy and completeness standard of the FCRA.

85.     Plaintiff alleges that Equifax did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

86.     If Equifax reviewed such standards, Equifax would have seen that its reporting was not in compliance and was therefore inaccurate or incomplete.

87.     By continuing to report the Unnamed Account twice, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she may actually owe, if any, which in inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

88.     In addition, by continuing to report the Unnamed Account without an Account Name or Original Creditor, Plaintiff is unable to identify who else, if anyone, may be responsible for these inaccurate tradelines. Further, without being able to determine who this account belongs to, Plaintiff is unable to determine if the accounts are fraudulent or if the payment status and outstanding balance are also inaccurate.

89.     The lack of investigation and reporting of inaccurate and incomplete information by Equifax is unreasonable.

**b.     Inaccuracy – Jefferson**

90.     Despite actual knowledge, Equifax continued to report Plaintiff's Jefferson account, beginning in 350403XXXX, as an Open Account and separately as a Collections Account; both with a current balance and past due amount of "$210".

91.     Despite actual knowledge, TransUnion continued to report Plaintiff's Jefferson account, beginning in 350403XXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance of "$210".

92.     Reporting a single account as two tradelines, each listing the full balance, is patently inaccurate. Further, as the algorithms that calculate credit scores cannot account for or offset duplicated reporting, this type of reporting is also misleading to an extent to adversely affect credit decisions.

93.     Neither Equifax or TransUnion updated the reporting to delete the duplicated reporting.

94.     Equifax and TransUnion were both provided notice that Plaintiff was disputing the inaccurate and misleading information, but Equifax and TransUnion both failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

95.     The most basic investigation would include a simple review of internal documentation on the account (i.e., the fact there is only one account) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

96.     Plaintiff alleges that Equifax and TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

97.     If Equifax and TransUnion reviewed such standards, Equifax and TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

98.     By continuing to report Plaintiff's Jefferson account as described in paragraphs 90-91, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she actually may owe; which is patently inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

99.     The lack of investigation and reporting of inaccurate and incomplete information by Equifax and TransUnion is unreasonable.

c.    **Inaccuracy –  LVNV**

100.    Despite actual knowledge, Equifax continued to report Plaintiff's LVNV account, beginning in 444796XXXXXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance and past due amount of "$1,993".

101.    Despite actual knowledge, TransUnion continued to report Plaintiff's LVNV account, beginning in 444796XXXXXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance of "$1,993".

102.    Reporting a single account as two tradelines, each listing the full balance, is patently inaccurate. Further, as the algorithms that calculate credit scores cannot account for or offset duplicated reporting, this type of reporting is also misleading to an extent to adversely affect credit decisions.

103.    Neither Equifax or TransUnion updated the reporting to delete the duplicated reporting.

104.    Equifax and TransUnion were both provided notice that Plaintiff was disputing the inaccurate and misleading information, but Equifax and TransUnion failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

105.    The most basic investigation would include a simple review of internal documentation on the account (i.e., the fact there is only one account) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

106.    Plaintiff alleges that Equifax and TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

107.    If Equifax and TransUnion reviewed such standards, Equifax and TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

108.    By continuing to report Plaintiff's account to as described in paragraphs 100-101, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she actually may owe; which is patently inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being

what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

109.    The lack of investigation and reporting of inaccurate and incomplete information by Equifax and TransUnion is unreasonable.

**d.      Inaccuracy – Portfolio**

110.    Despite actual knowledge, Equifax continued to report one of Plaintiff's Portfolio accounts, beginning in CAPIT-XXXXXXXXXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance and past due amount of "$635".

111.    Despite actual knowledge, Equifax continued to report a second of Plaintiff's Portfolio accounts, beginning in CAPIT-XXXXXXXXXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance and past due amount of "$707".

112.    Despite actual knowledge, TransUnion continued to report one of Plaintiff's Portfolio accounts, beginning in 517805XXXXXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance of "$635".

113.    Despite actual knowledge, TransUnion continued to report a second of Plaintiff's Portfolio accounts, beginning in 517805XXXXXXXXXX, as an Open Account and separately as a Collections Account; both with a current balance of "$707".

114.    Reporting a single account as two tradelines, each listing the full balance, is patently inaccurate. Further, as the algorithms that calculate credit scores cannot account for or offset duplicated reporting, this type of reporting is also misleading to an extent to adversely affect credit decisions.

115.    Neither Equifax or TransUnion updated the reporting to delete the duplicated reporting.

116.    Equifax and TransUnion were both provided notice that Plaintiff was disputing the inaccurate and misleading information, but Equifax and TransUnion both failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

117.    The most basic investigation would include a simple review of internal documentation on the accounts (i.e., the fact there is only two accounts) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

118.    Plaintiff alleges that Equifax and TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

119.    If Equifax and TransUnion reviewed such standards, Equifax and TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

120.    By continuing to report Plaintiff's accounts as described in paragraphs 110-113, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she actually may owe; which is patently inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

121.    The lack of investigation and reporting of inaccurate and incomplete information by Equifax and TransUnion is unreasonable.

**e.      Inaccuracy – Trident**

122.    Despite actual knowledge, Equifax continued to report Plaintiff's Trident account, beginning in 900960XXXX, as an Open Account and separately as a Collections Account; both with a current balance of "$619".

123.    Despite actual knowledge, TransUnion continued to report Plaintiff's Trident account, beginning in 900960XXXX, as an Open Account and separately as a Collections Account; both with a current balance of "$619".

124.    Reporting a single account as two tradelines, each listing the full balance, is patently inaccurate. Further, as the algorithms that calculate credit scores cannot account for or offset duplicated reporting, this type of reporting is also misleading to an extent to adversely affect credit decisions.

125.    Neither Equifax or TransUnion updated the reporting to delete the duplicated reporting.

126.    Equifax and TransUnion were both provided notice that Plaintiff was disputing the inaccurate and misleading information, but Equifax and TransUnion failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

127.    The most basic investigation would include a simple review of internal documentation on the account (i.e., the fact there is only one account) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

128.    Plaintiff alleges that Equifax and TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

129.    If Equifax and TransUnion reviewed such standards, Equifax and TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

130.    By continuing to report Plaintiff's account as described in paragraphs 122-123, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she actually may owe; which is patently inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

131.    The lack of investigation and reporting of inaccurate and incomplete information by Equifax and TransUnion is unreasonable.

**f.    Inaccuracy – Capital**

132.    Despite actual knowledge, TransUnion continued to report Plaintiff's Capital account, beginning in 260854X, as an Open Account and separately as a Collections Account; both with a current balance of "$140".

133.    Reporting a single account as two tradelines, each listing the full balance, is patently inaccurate. Further, as the algorithms that calculate credit scores cannot account for or offset duplicated reporting, this type of reporting is also misleading to an extent to adversely affect credit decisions.

134.    TransUnion failed to update the reporting in order to delete the duplicated reporting.

135.    TransUnion was provided notice that Plaintiff was disputing the inaccurate and misleading information, but TransUnion failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

136.    The most basic investigation would include a simple review of internal documentation on the account (i.e., the fact there is only one account) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

137.    Plaintiff alleges that TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

138.    If TransUnion reviewed such standards, TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

139.    By continuing to report Plaintiff's account as described in paragraph 132, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she actually may owe; which is patently inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

140.    The lack of investigation and reporting of inaccurate and incomplete information by TransUnion is unreasonable.

**g.    Inaccuracy – IC**

141.    Despite actual knowledge, TransUnion  continued to report Plaintiff's IC account, beginning in 978341XX, as an Open Account and separately as a Collections Account; both with a current balance of "$224".

142.    Reporting a single account as two tradelines, each listing the full balance, is patently inaccurate. Further, as the algorithms that calculate credit scores cannot account for or offset duplicated reporting, this type of reporting is also misleading to an extent to adversely affect credit decisions.

143.    TransUnion failed to update the reporting in order to delete the duplicated reporting.

144.    TransUnion was provided notice that Plaintiff was disputing the inaccurate and misleading information, but TransUnion failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

145.    The most basic investigation would include a simple review of internal documentation on the account (i.e., the fact there is only one account) compared to its reporting in

order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

146.    Plaintiff alleges that TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

147.    If TransUnion reviewed such standards, TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

148.    By continuing to report Plaintiff's account as described in paragraph 141, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff currently owes twice the amount she actually may owe; which is patently inaccurate. Further, as this inaccurate double reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

149.    The lack of investigation and reporting of inaccurate and incomplete information by TransUnion is unreasonable.

**h.    Inaccuracy – Rise**

150.    Despite actual knowledge, Rise continued to report Plaintiff's account, beginning in 664609XX, to TransUnion, with a current payment status of "30 days past due". This is patently incorrect as this account was paid or settled in or about July of 2016.

151.    Plaintiff alleges that Rise did not investigate whether Plaintiff previously paid the account.

152.    Rise did not update the tradeline to reflect that Plaintiff paid or settled the account, and that it was not currently past due.

153.    TransUnion provided notice to Rise that Plaintiff was disputing the inaccurate and misleading information, but Rise failed to conduct a reasonable investigation of the information as required by the Fair Credit Reporting Act.

154.    The most basic investigation would include a simple review of internal documentation on the account (i.e., payments, including final payment or satisfaction of settlement) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA regarding how to report a debt legally paid in full.

155.    Plaintiff alleges that Rise did not review if its reporting complied with the unambiguous language of the FCRA, regulatory guidelines on accurate reporting under the FCRA, or its own internal records concerning Plaintiff's account.

156.    If Rise reviewed such standards, or its own internal records regarding Plaintiff's account, Rise would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

157.    In the alternative, if any amount remained owed by Plaintiff to Rise after the 2016 settlement, which Plaintiff denies, said amount would have been included and discharged in Plaintiff's subsequent bankruptcy in that the Rise account occurred pre-petition and would have been discharged in the Chapter 7 bankruptcy filed on December 2, 2016 and discharged on June 12, 2017. Under either event (settlement or bankruptcy discharge), Rise in inaccurately reporting the account as currently past due.

158.    By continuing to report Plaintiff's account to TransUnion as described in paragraph 150, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff is currently behind on her payments, which in inaccurate. Past due debts are far more injurious to a credit score than a debt paid or settled as agreed. Further, as this inaccurate reporting is being used to calculate Plaintiff's FICO Score, the FICO Score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

159.    As payment history (including payment status) makes up thirty-five percent (35%) of a consumer's FICO Score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to pouring through each tradeline of every account listed to obtain context), the incorrect payment status and payment history reported by Rise on the account is lowering Plaintiff's credit score, which adversely affects Plaintiff's ability to obtain credit.

160.    The lack of investigation and reporting of inaccurate and incomplete information by Rise is unreasonable.

**E.    Damages**

161.    Plaintiff pulled the credit reports at issue at a cost for access to the report, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

162.    As a result of the incorrect reporting, Plaintiff has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit

Reporting Act and the power of this Court to preserve her right to a complete and accurate credit report.

163.    Plaintiff has been denied credit and is unable to rebuild her credit based on the inaccurate reporting by Equifax.

164.    Plaintiff has been denied credit and is unable to rebuild her credit based on the inaccurate reporting by TransUnion.

165.    Plaintiff has been denied credit and is unable to rebuild her credit based on the inaccurate reporting by Rise.

166.    Equifax's, TransUnion's, and Rise's respective actions, as alleged herein, are each in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

**FIRST CAUSE OF ACTION**

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))**

**(Against Defendants and Does 1-100)**

167.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    Equifax and TransUnion Each Failed to Assure Credit Reporting Accuracy**

168.    Equifax and TransUnion (collectively, the "CRA Defendants") each violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

169.    Had Equifax maintained reasonable procedures to assure maximum accuracy, it would have never reported the Jefferson account, LVNV account, Portfolio accounts, or Trident account as described herein.

170.    Had Equifax maintained reasonable procedures to assure maximum accuracy, it would have never reported the Unnamed Account as described herein.

171.    Equifax knew, or should have known, the Unnamed Account is required to be reported with an Account Name and Original Creditor for completeness, and that Plaintiff cannot verify any of the account without such information. Equifax knew, or should have known, the Unnamed Account can only be reported once, and that reporting the account twice, each with a balance, is patently incorrect and misleading. Further, Equifax knew, or should have known, that

these inaccurate and incomplete tradelines do not reflect *maximum possible accuracy and completeness* as required by the FCRA.

172.    Equifax knew, or should have known, that the Jefferson account, LVNV account, Portfolio accounts, and Trident account can each only be reported once, and that reporting each account twice and each tradeline with a balance is patently incorrect and misleading. Further, Equifax knew, or should have known, that continuing to report the account does not reflect maximum possible accuracy and completeness as required by the FCRA.

173.    Had TransUnion maintained reasonable procedures to assure maximum accuracy, it would have never reported the Jefferson account, LVNV account, Portfolio accounts, Trident account, Capital account, IC account, or Rise account as described herein.

174.    TransUnion knew, or should have known, that the Jefferson account, LVNV account, Portfolio accounts, Trident account, Capital account, and IC account can each only be reported once, and that reporting each account twice and each tradeline with a balance is patently incorrect and misleading. Further, TransUnion knew, or should have known, that continuing to report a single account twice, both with a balance listed, does not reflect maximum possible accuracy and completeness as required by the FCRA.

175.    TransUnion knew, or should have known, (1) that the Rise account was paid or settled, and (2) that the account should not have been reported with a current payment status tradeline of "30 days past due" as the debt was paid or settled. Further, TransUnion knew, or should have known, that this inaccurate and incomplete tradeline does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

176.    As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit and other mental and emotional distress.

**B.    Willful Violations**

177.    The CRA Defendants' violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

178.    The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding the disputes. Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

179.    To the extent the CRA Defendants do send consumer disputes, they send these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

180.    The CRA Defendants' respective employees receive little to no training concerning how to accurately report consumer debt.

181.    Instead, the CRA Defendants' respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

182.    The CRA Defendants' respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

183.    The CRA Defendants have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

184.    As a result of the CRA Defendants' violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

185.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

186.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

187.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

## (Violation of Fair Credit Reporting Act 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(1))

## (Against Defendants and Does 1-100)

188.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.      Rise Failed to Reinvestigate Following Plaintiff's Dispute**

189.    Pursuant to 15 U.S.C. §§ 1681s-2(b), data furnishers are prohibited from providing any information relating to a consumer to any CRA if it knows, or has reasonable cause to believe, that the information is inaccurate or misleading and requires data furnishers to update and/or correct inaccurate information after a CRA notifies it of a consumer dispute.

190.    Rise sent an Automated Universal Dataform ("AUD") to the Credit Reporting Agencies reporting Plaintiff's account as past due. After Plaintiff settled and paid the account in full for less than the full amount in or about July of 2016, Rise sent another AUD to TransUnion reporting the accounts current payment status as "30 days past due".

191.    After receiving the First Dispute Letter, Rise did not correct the payment status, but instead verified and re-reported the current payment status as "30 days past due" via ACDV to TransUnion.

192.    The payment status reported in an AUD or ACDV represents the status of the account at the time of sending the AUD or ACDV, and is not a historical contractual item (i.e., monthly payment, highest balance, payment history, etc.). Therefore, even in the event the account was previously past due, if at all, it has no bearing on its *current* pay status after the account was paid or settled as agreed.

193.    Rise violated 15 U.S.C. § 1681s-2(b) by either failing to conduct an investigation or failing to conduct a reasonable investigation, and re-reporting misleading and inaccurate account information.

194.    TransUnion provided notice to Rise that Plaintiff was disputing the inaccurate and misleading information; however, Rise either failed to conduct any investigation or failed to conduct a reasonable investigation as required by the FCRA.

195.    Based on Plaintiff's dispute, and review of its internal records on the account, Rise should have known its account was paid or settled as agreed and ceased its inaccurate reporting.

196.     Reporting a paid or settled debt as currently past due is patently inaccurate. In addition, this inaccurate reporting also adversely affects credit decisions. Payment history (including payment status), at thirty-five percent (35%), is the heaviest weighted factor that goes into calculating a FICO score. Most lenders, employers, and other individuals who access a consumer's credit report approve or deny credit or employment based upon the reported FICO Score and do not take the time to look through each tradeline of every account listed to obtain context. Therefore, Rise's reporting as described herein has a direct adverse effect on Plaintiff's FICO Score and her ability to rebuild her credit score and obtain new credit.

197.     The lack of investigation by Rise, as required by the FCRA, is unreasonable.

**B.     Willful Violations**

198.     Plaintiff alleges that Rise has reported based upon objectively unreasonable interpretations of the FCRA standards of credit reporting and regulatory guidelines on how to accurately reporting under the FCRA.

199.     Plaintiff further alleges that Rise has not properly trained those directly investigating disputes on FCRA requirements or credit reporting industry standards and, as such, have developed reckless policies and procedures.

200.     Plaintiff alleges that rather than train its employees on accurate credit reporting, FCRA requirements, and industry standards, Rise's employees tasked with reviewing disputes are expected to confirm the information being reported "as accurate" instead of investigating the reporting.

201.     In the alternative, Rise was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

**C.     The CRA Defendants Each Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

202.     Pursuant to 15 U.S.C. 1681i(a)(1), Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's disputes regarding the Jefferson account, LVNV account, Portfolio accounts, Trident account, and the Unnamed Account.

203.     Pursuant to 15 U.S.C. 1681i(a)(1), TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice

of Plaintiff's disputes regarding the Jefferson account, LVNV account, Portfolio accounts, Trident account, Capital account, IC account, and the Rise account.

204.    Thus, the CRA Defendants each failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the accounts within the statutory time frame.

205.    The CRA Defendants are not a passive entities bound to report whatever information a data furnisher provides.

206.    Plaintiff alleges the CRA Defendants are readily familiar with FCRA requirements and credit reporting industry standards.

207.    Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

208.    The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

209.    TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that Jefferson, LVNV, Portfolio, Trident, Capital, IC, and Rise were not reporting their respective accounts at issue correctly.

210.    Had TransUnion conducted a proper investigation, it could have closed or bookended the Rise account by adding a notation on the tradeline that the debt was in fact paid or settled as agreed and not currently past due. However, TransUnion continued to report the Rise account as described herein.

211.    In addition, had TransUnion conducted a proper investigation, it could have deleted the duplicated reporting of the Jefferson, LVNV, Portfolio, Trident, Capital, and IC debts. However, TransUnion continued to report each of the Jefferson, LVNV, Portfolio, Trident, Capital, and IC accounts twice as described herein.

212.    Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that Jefferson, LVNV, Portfolio, and Trident were not reporting their respective accounts at issue correctly, and that the Unnamed Account was not being reported correctly or completely.

213.    Had Equifax conducted a proper investigation, it could have deleted the duplicated reporting of the Jefferson, LVNV, Portfolio, and Trident debts. However, Equifax continued to report each of the Jefferson, LVNV, Portfolio, and Trident accounts twice as described herein.

214.    In addition, had Equifax conducted a proper investigation it could have added an Account Name and Original Creditor to the Unnamed Account and deleted the duplicated reporting of the Unnamed Account. However, Equifax continued to report the Unnamed Account as described herein.

215.    The CRA Defendants, therefore, did not conduct even the most basic investigation regarding credit reporting industry standards, otherwise the aforementioned would have been uncovered.

**THIRD CAUSE OF ACTION**

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))**

**(Against Defendants and Does 1-100)**

216.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    The CRA Defendants Each Failed to Review and Consider all Relevant Information**

217.    The CRA Defendants each violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

218.    The CRA Defendants' violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.    Willful Violations**

219.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

220.    In the alternative, the CRA Defendants were each negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

221.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION

## (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

## (Against Defendants and Does 1-100)

222.    Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    The CRA Defendants Each Failed to Delete Disputed and Inaccurate Information**

223.    The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

224.    The CRA Defendants' violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.    Willful Violations**

225.    The CRA Defendants' violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

226.    In the alternative, the CRA Defendants were each negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

227.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

228.    WHEREFORE, Plaintiff prays for judgment as follows:

a.    For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

b.    Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

c.    Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

d.    Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

e.    For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq*.; and

 f. For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: May 3, 2021       */s/ Kyle Schumacher*
             Kyle Schumacher
             Attorney for Plaintiff

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial of this matter by jury.


**SCHUMACHER LANE PLLC**

Dated: May 3, 2021                          _/s/ Kyle Schumacher_
                                                             Kyle Schumacher
                                                             Attorney for Plaintiff